Case number 319-0117, People of the State of Illinois, Appalachia versus James Watkins Appellant. Good afternoon. Before we begin, just like to let everyone know that we've been having some difficulty getting Justice Holderidge, who is our third panel member, onto the argument. We are recording, he will be fully participating in both our discussions and in our decision. And we'll have the benefit of the recording. Should we be able to link him in, he will be joining us as things are ongoing. Justice Schmidt is with us. And with that, Mr. Barnes, you may proceed. Good afternoon, your honors. Ian Barnes of counsel for the State Appellate Defender on behalf of Mr. Watkins. If it pleases the court and my colleague from the state, on the final day of trial, moments before closing argument, trial counsel made several statements that revealed he was not prepared for trial. He had not prepared his client to testify and he had not anticipated that the state would put on rebuttal evidence in a self-defense murder case. While being reprimanded for his lack of preparation by the trial court, trial counsel twice attempted to interrupt the trial court to claim that the state's rebuttal evidence was a surprise. The trial court replied that it was no surprise that counsel would have to account for any other versions of statements that Mr. Watkins had made to law enforcement other than his trial testimony. As the trial court said, it's law school 101. That theme winds its way through this entire case because counsel's lack of preparation precipitated numerous prejudicial errors at every stage of this trial. And in a case that revolved around one single contested issue, those errors failed to subject this case to meaningful adversarial testing under the chronic standard. But in the alternative, it denied Mr. Watkins the fair trial that he is entitled to pursuant to the Strickland standard. I'd like to begin by focusing on trial counsel's errors regarding jury instructions. And from there, in the context of trial counsel's lack of preparation, move to address the other errors that occurred at opening statements, closing arguments, cross-examination, and the preparation of his own client to testify. The first issue is trial counsel's failure to request the language in IPI 24-25.06, which would have informed the jury that force is permissible to prevent the commission of a forcible felony. And an Illinois robbery is a forcible felony. During both its opening statement  the state encouraged the jury to believe that that statement was a forcible felony. And that is what occurred here, that Mr. Watkins stabbed King Abel because King Abel was attempting to rob him. And that theory, if accepted by the jury, would have required acquittal on the basis of this language in the IPI. Trial counsel did not submit that language. And without it, the jury had no way of knowing that this was a basis for acquittal. The second jury instruction issue goes to Mr. Watkins' duty or lack thereof to retreat. During its closing argument, the state tried to undermine the reasonableness of what Mr. Watkins did by arguing he could have simply left the house. And to a jury of lay people,  except for the fact that in Illinois, the person who is not the initial aggressor has no duty to retreat before using force. So this is another instance where the jury was deprived of crucial law that went directly to the self-defense issue in this case. And the state's argument had the effect of essentially telling the jury that Mr. Watkins did something that was unreasonable, even though the law says that is what he is permitted to do. So for both of these issues, trial counsel's lack of preparation failed to give the jury the critical instructions they needed to apply to the evidence in this case. And it's worth noting that all counsel had to do was look in the IPIs, look in the instructions that have been promulgated for every criminal case in this state, and he would have found them, but he didn't. And that lack of preparation, as I said, winds its way through this case, and it's perhaps no better, the opening statement is emblematic of that lack of preparation, because opening statement was his chance to relate to the jury, to tell the jury who Mr. Watkins was, to tell them what evidence they were going to hear that would lead them to acquit him, and to tell them what Mr. Watkins' defense was. And trial counsel did none of those things. He was not an advocate for his client. Instead, what he did was three times endorse the version of events that had been given by the state, which of course did not mention self-defense, and told the jury that they would be asking for a verdict of guilty. This was a situation where, clearly this was not trial strategy. This was evidence of trial counsel's lack of preparation, and of his lack of strategy. Because his opening statement only mentioned Mr. Watkins one time, and that was to introduce himself as Mr. Watkins' lawyer. It was an opening statement that could be copied and pasted into any other felony trial, and that was to show that he was a lawyer. And he was a lawyer in a felony trial without changing anything but Mr. Watkins' name. And we see this as a clear demonstration of the chronic standard. Trial counsel was not prepared. He was not able to give the jury even the most basic idea of what this case was about. And we see that carried through into his preparation of his client to testify. On that third day of trial, when having an exchange with the trial court, trial counsel said that morning he had gone to the jail to watch the video of the interrogation with Mr. Watkins so that Mr. Watkins could lay foundation for the video. And this was after, of course, Mr. Watkins had already testified. As your honors know, to lay foundation for that video, Mr. Watkins would only have to say that he'd watched the video and that it accurately reflected the content of the conversation. If Mr. Watkins had ever watched this video before, he would have been able to lay foundation. There was no other logical conclusion other than that Mr. Watkins had never watched this video with his attorney before taking the stand in a self-defense murder trial. And that circles right back again to the chronic standard. We should all take a pause at the idea that Mr. Watkins went on the stand without ever having reviewed this video with his attorney. We can continue to see the same lack of preparation when it comes to the state's rebuttal case. The state put on detective land wear and rebuttal ostensibly to impeach Mr. Watkins. And in particular, one perfect example is when the state asked detective land wear if Mr. Watkins had ever said anything about Abel putting his hands on Mr. Watkins' neck. And the detective said, no. On cross-examination defense counsel asked him a nearly identical question. And the answer was no. But if we look to the interrogation video, the answer is clearly yes. Mr. Watkins did say that. And trial counsel watched an opportunity to impeach detective land wear and rehabilitate his client's testimony sail by because he was not prepared. We know that from the conversation trial counsel had with the trial court that morning on the final day of trial. He said he had not, up until that point, done a thorough marking down of every statement his client had made in that interrogation. Which means at the time detective land wear testified, trial counsel was not prepared to cross-examine him. At the time that he was supposed to do his job, he was not prepared to do it until the following morning, at which point the opportunity to impeach him had long passed. And we have to, I think, stop and ask, looking in the context of Kronick, if trial counsel could not prepare his own client to testify and he could not prepare to cross-examine what was arguably the other most important part of this case, Mr. Watkins' testimony and the rebuttal case, this does render the proceeding fundamentally unreliable. We have to ask what else counsel did or didn't do. And we have to conclude that prejudice is presumed here because this was the singular most important issue of this case. Well, let me ask you a question. With respect to the video, your client's statement, he only got that in, didn't he? Trial counsel did manage to admit two short clips the following day, excuse me. And that included the clip where he said other person put his hands on his neck. Yes. And the problem with that, your honor, is as the Lee case recognized, impeachment is a particularly dramatic and effective tool for damaging the credibility of witnesses. And trial counsel wasn't able to avail himself of that. He was not able with detective Landwehr on the stand to impeach him, damage his credibility, and at the same time, rehabilitate Mr. Watkins' credibility because Mr. Watkins had been impeached for something that he hadn't, that was actually untrue. Well, whether he did it, whether he did it while the detective was on the stand or not, didn't the video impeach the statement and rehabilitate his client's statement? It did manage to get that into evidence, but I would disagree that it had the same effectiveness, your honor. And this also circles back to the chronic issue because if we're looking at it in Strickland, in the context of Strickland, I would certainly argue that, yes, this was prejudicial. Yes, it was an error. And yes, it warrants reversal, but under chronic, we also don't have to establish prejudice. Prejudice is presumed. And that's evident in the fact that trial counsel was not prepared to try this case. He was not prepared to cross-examine the detective. So under both of those lines of ineffective assistance, I would say this issue goes to both. It's just a different form. One requires prejudice, one does not. But I would also just add that trial counsel's errors didn't stop there either. If we look to closing argument, the state made two misstatements of the law. One of which was, you're not allowed to use deadly force unless you believe deadly force is being used against you. And the second was, it was inappropriate to use a knife to end what may have essentially been a verbal altercation in a fist fight or combat. Or tussling. Both of those, if we look at section 7-1 of the criminal code and the accompanying IPI, which is the 24-25.06 instruction, those are fundamentally incompatible with what the state said in closing. The state offered a much higher bar for when it is permissible to use deadly force than the law actually sets out. And trial counsel did nothing. He stood by and let the state give the jury an inappropriate statement of the law. On top of the fact that he didn't give the jury instructions they should have received. So all of these things together reflect a trial counsel who was not prepared to try this case, who was not in arm, he was not armed with all the facts, he was not armed with the law. And in conclusion, I just wanna reiterate, very little in this case was contested. Cause of death was not contested. Mr. Watkins' intent was not contested. Identity was not an issue. The only issue in this case was, was Mr. Watkins' use of force reasonable or justified? And each and every one of these issues that I've talked about, and still more in the brief, all go to this one single issue. These are not ancillary tangential errors. These all affected the law that the jury had to apply to the evidence, the credibility of critical witnesses, which of course the trial court recognized. It recognized that Mr. Watkins' testimony and the rebuttal about his interrogation video was the crux of this case. And counsel wasn't prepared to do it. Counsel's failures to subject this issue to meaningful adversarial testing support reversal under Kroenig. But in the alternative, they also support, all these errors also support reversal for a new trial under the Strickland standard. So if your honors have no further questions at this time, I have nothing further at the moment. I don't believe so. Justice Schmidt, do you have any questions? No. Thank you. Thank you, Mr. Barnes. I believe, Ms. Lerner, I believe that Justice Holdredge is connected. Why don't you wanna go ahead and proceed unless it's distracting to you. I'm sorry? I said, you may go ahead and proceed in this. It's distracting that, Justice Holdredge, have you? Yes, our computer is up and working now. Thank you. Sorry about that. You may proceed, Ms. Raymond. Okay, thank you. May it please the court, your honors, counsel. My name is Stephanie Raymond. I represent the state of Illinois in this matter. Just to address some of the things that the defendant brought up. First, the jury instructions regarding robbery. That was the state's theory, not the defendant's theory. He never, he actually contested the fact that it was a robbery. So to submit jury instructions on such, it would make no sense. And regarding the jury instructions on the defendant's, quote-unquote, duty to retreat, the focus of defendant's defense was that his actions were reasonable,  before he committed the murder. So for the defense counsel to submit instructions on that also was not in effectiveness, where it sort of was combative to his defense of the case. Regarding the video of defendant's interrogation, the video was several hours long. To say that another review of it means he never watched it is speculative. The video being several hours long and him later finding out that he needed specific pieces of the video, when he announced to the court that he was not prepared, he announced that he was not prepared in the context of not having marked down those specific timeframes, so that the court could go directly to those timeframes, as opposed to playing the entire video, because that's not something that he was permitted to do. So I think it's important to look at what is said and what trial counsel said when he was asked that. The court asked him about why he was not prepared and he said he did not, regarding the video, he said he did not have those specific sections marked down. So it's not that he never watched the video, and I think to say that, because I don't have specific sections marked down that I didn't watch the entire video, I don't think that that's what the record reflects. So, and also regarding the video with his client, to say that he reviewed it that morning with his client, also does not mean that he never watched it with his client or that his client wasn't aware of, what their strategy was with the video. So I think that's speculative as well. Defendant points to statements in both opening and closing that they felt that the defense attorney should have objected to. However, opening and closing statements are not evidence. In this case, the jury was instructed as such. So it's presumed that they take those instructions and apply them properly. So the opening statements where defense counsel doesn't object to and where defendant says he acquiesces, it's where he says that the state laid a good roadmap. As defendant correctly points out, there was little contested in this case. In fact, him committing the actual murder was not contested. It was whether he was reasonable in doing that, in stabbing the victim. So to say that because he didn't object to the state's opening or lay out a specific roadmap of his own effects does not mean that he's ineffective. And he also, if his client is gonna later testify, which the record isn't clear that that was figured out until later, if his client is gonna testify, if he lays out specific facts, it may then come back to haunt him if it's in conflict with what the defendant testifies to. So as to say that he's gonna talk later about the facts, that's not ineffectiveness. So the chronic standard that defendant points to, it's only applicable when the surrounding circumstances justify the presumption of prejudice. It's the state's position that that's not present here. So the state then would submit the chronic standard, or I think I'm saying here, chronic standard is applicable. The state feels it's not applicable in this situation. So if there are no further questions, the people would ask that you just affirm. I don't see any other questions, Ms. Raymond. Thank you. Mr. Barnes for rebuttal. Thank you, your honors. The first point I wanna address is this notion that the robbery theory was the state's theory and not Mr. Watkins. And certainly that's true. That was the state's theory. Mr. Watkins' defense was that Abel had attacked him and he had feared for his life and stabbed him in self-defense, but nothing in the state's brief, and I'm aware of no law that says instructions have to be specific to that party's particular theory. Instructions are meant to give the jury the applicable law to go with the facts. And there's nothing in the briefing before this court, and there's nothing I'm aware of that would prevent counsel from offering that instruction as it affected the state's case. The second point I wanna make, and Justice Schmidt, this goes back to your question. I wanted to pull out a fact from the brief that I wasn't exactly sure about off the top of my head. While the court did permit counsel to introduce a couple of clips that went to the issue of whether Mr. Watkins had said Mr. Watkins' neck, there were some other issues of impeachment that counsel did not do that for. And the one I'm particularly thinking of is the issue of how many times Mr. Watkins said he stabbed Abel. At trial, I believe he said twice, and Detective Lanware was asked how many times did he say he stabbed Abel, and the detective said once. And there is a clip in the interrogation where Mr. Watkins says it was once or twice. So there are issues where Mr. Watkins was impeached and he shouldn't have been. Counsel wasn't prepared to deal with it at the time, and then never went back and did anything with that clip anyway. So the jury- Well, let me ask you, do you think a defense counsel really wants, if the police officer said once, do you think the defense counsel wants to point out to his jury that his client stabbed the guy more than that? Well, his testimony at trial was twice. So the jury already heard twice. The issue was, did it affect Mr. Watkins' credibility? Did it make it seem like he was fabricating something and couldn't keep his story straight? And of course, that's what impeachment does. And trial counsel wasn't prepared to fix that problem. He was not prepared to address the issue because as he said on that last day of trial, he hadn't done a thorough marking down of all these statements beforehand. And that brings me to the next point I wanted to address, which is, I believe the state is conflating the act of reviewing evidence with being prepared. Whether defense counsel did a review of the evidence on some level is not the issue here. It's, was he prepared? Was he actually prepared to do what is necessary to provide zealous and competent representation for his client? And in the context of that impeachment issue, it's clear that he wasn't. He was not ready to impeach the detective on the stand. He had to go home that night, watch the video some more, and come back and pray that the trial court was gonna let him put on this evidence, which didn't have the same impact as it would if the detective had been impeached. The last point I think I wanna make is the issue of trial counsel saying he watched the video with his client that morning. We don't have to speculate why trial counsel watched that video with him. He says precisely why he did it, and that was so his client could lay a foundation. He didn't say it was so we could double check something or we could double check an issue or a fact. It was so his client could lay foundation. And we know, as I said earlier, if he had to have his client review the video to lay foundation, that means he had never watched it before because otherwise he'd be able to. So in conclusion, on the basis of all of these issues and trial counsel's pervasive lack of preparation at every stage of trial, and his lack of advocacy at every stage of trial, this court can and should reverse on the basis of either Cronick or Strickland, but in the alternative, based on what's in the briefing, this court should reverse and remand for a new sentencing hearing, or the third alternative, alter Mr. Watkins' sentence outright and reduce it. So unless your honors have no further questions, I have nothing further. I don't see any other questions. So with that, thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible.